UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN MOSZ,<br><br>   Plaintiff,<br><br> v.<br><br>DAVID ALLREAD, et al.,<br><br>   Defendants. | No. 2:19-cv-1010 DB P<br><br><br>ORDER |

Plaintiff, a federal prisoner proceeding without counsel in this action brought pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971),[1] seeks leave to proceed in forma pauperis.

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account.

---

[1] The Ninth Circuit has recognized that "[a]ctions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Strum v. Lawn, 929 F.2d 1384, 1388 (9th Cir. 1991).

1

These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**I.     Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.    Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

////

////

### III. Plaintiff's Allegations

At all times relevant to this action, plaintiff was a federal inmate housed at Federal Correctional Institution in Herlong, California ("FCI-Herlong"). This action is brought against Medical Director Dr. Allred, Health System Administrator ("HSA") Tuttle, and Physician Assistants ("PA") Tabor and Bullock. Plaintiff seeks injunctive relief and damages.

Plaintiff's allegations can be fairly summarized as follows:

In March 2018, plaintiff began to experience episodes of dyspnea, a condition involving painful or difficult breathing due to inadequate ventilation or insufficient amounts of oxygen circulating in the bloodstream. Plaintiff's initial symptoms included frequent headaches, dizziness, throat soreness, and grasping and choking for air, causing sleep disturbance. Six months after its onset, plaintiff began to experience chest pain, hoarseness of voice, throat pain, dry cough, and dysphagia (throat swelling). Seven months after its onset, plaintiff's condition worsened to include occasional coughing up of blood, feeling like his "esophagus is going to come through [his] throat" when lying down, pain and pressure in the esophagus, throbbing pain in and around his neck, swollen glands under the jaw and throat, pain in ears, white substance discharge from the throat, spine pain in the neck region, and popping in the chest with deep breaths.

When these symptoms first started, plaintiff was housed at the United States Penitentiary ("USP") in Victorville, California. While housed there, an x-ray revealed nothing 'remarkable,' but plaintiff's inhaler was renewed and a USP Victorville doctor submitted an order that plaintiff undergo an MRI scan. Before the MRI could be performed, however, plaintiff was scheduled to be transferred to FCI-Herlong. On his way there, plaintiff suffered a severe dyspnea episode at a holdover facility. Because of that episode, plaintiff was determined to require chronic care. He remains a chronic care patient as of the time of the filing of the pleading.

Following plaintiff's transfer to FCI-Herlong, he repeatedly informed each of the named defendants of his worsening condition between May and August 2018. None of the defendants provided any pain management or treatment.

On or around July 2018, Dr. Allred suggested that plaintiff's "shortness of breath" was related to anxiety; he referred plaintiff to the FCI Herlong Psychology Department.

On August 28, 2018, Dr. Allred noted in plaintiff's medical record that there had been "no relief with albuterol [inhaler] past 4 months."

On September 12, 2018, Dr. Allred diagnosed plaintiff with costochondritis, a condition that follows blunt force to the chest, even though plaintiff told Dr. Allred that he had never experienced blunt force to the chest. Plaintiff took the medication prescribed by Dr. Allred (Ibuprofen and Acetaminophen), but he did not experience relief from the chest pain. Plaintiff reported to each of the defendants that this medication did not relieve his pain, but defendants did not provide any alternative pain management or treatment. Also in September 2018, plaintiff asked about the MRI scan that was ordered by the USP Victorville doctor, but Dr. Allred said it was unnecessary.

On September 25, 2018, plaintiff went on a "medical run" where he saw non-party Advanced Practice Registered Nurse ("APNR") Andrea E. Butters, whose scope of work includes pulmonology and critical lung care. APNR Butters examined plaintiff, reviewed his medical history, and wrote that the dyspnea could be a sign of a serious medical problem and that further evaluation is critical. She then prescribed a Breo 200 inhaler, a trial of a corticosteroidal anti-inflammatory and bronchodilator combination inhaler, and daily moderate exercise. By the end of the following day, each of the defendants was made aware of this treatment plan. However, plaintiff did not receive the medications prescribed until four weeks later.

Eleven days after plaintiff was seen by APNR Butters, plaintiff experienced a severe dyspnea episode causing him to collapse. He was taken by ambulance to the emergency room of a local hospital escorted by at least one of the named defendants. At the hospital, plaintiff was seen by Dr. Shin Kim. Plaintiff conveyed his symptoms to Dr. Kim, who ran a CT scan on plaintiff. The CT scan did not reveal any abnormalities, but Dr. Kim noted to the FCI Herlong Medical Department that other testing should be performed because dyspnea could be a sign of a serious medical problem, including pulmonary hypertension (an abnormal increase in the blood pressure of the blood vessels of the lungs). Dr. Kim would have run the other tests, but the emergency

department was not adequately equipped to do so. Dr. Kim then wrote that plaintiff "should" follow up with his pulmonologist. He also prescribed Albuterol HFA oral inhaler and prednisone (an anti-inflammatory steroid used to prevent or abate swelling of a patient's throat or air passage). On October 11, 2018, the defendants were made aware of Dr. Kim's treatment and recommendations for plaintiff's dyspnea.

By mid-October 2018, plaintiff began to experience more severe symptoms of the dyspnea. His symptoms continued to worsen through the end of November 2018. He continued to inform the defendants, but they again failed to provide plaintiff with adequate pain management or treatment.

On November 19, 2018, plaintiff was seen by APRN Butters, who noted plaintiff's severe condition. She recommended several tests and medications, which were marked "Review ASAP." Each of the defendants was made aware of, but none of these recommendations or orders have been provided.

Due to the ongoing delays with plaintiff's medical care, plaintiff's mother and an attorney contacted prison officials. As a result, Dr. Allred met with plaintiff, mocking the fact that plaintiff's mother called, stating, "I'm not going to spend a million dollars on you to go on a wild goose chase. Nothing is wrong with you, all inmates lie." He then suggested that because plaintiff looks like an inmate who killed one of Dr. Allred's family members, Dr. Allred was not going to send plaintiff out for care or treatment.

On December 15, 2018, plaintiff again suffered a severe dyspnea episode. Dr. Allred waited more than ninety minutes before he saw plaintiff for this incident.

On January 2, 2019, plaintiff inquired about APRN Butters's recommendations, but Dr. Allred said she has not been answering his calls. "I find it extremely disrespectful and rude," he said. When plaintiff expressed hope that the situation could be resolved without using legal means, Dr. Allred said that he alone is responsible for health care decisions at FCI Herlong. Dr.

Allred then cancelled all "pending consults." Dr. Allred and PA Tabor also confiscated all of plaintiff's prescribed medications.[2]

On May 17, 2019, plaintiff was seen by a gastroenterologist, who recommended an upper GI and colonoscopy and who prescribed a Maalox type product. As of the date of the filing of the complaint, the defendants have declined these recommendations and prescriptions.

**IV.    Discussion**

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle,

---

[2] Plaintiff's earlier allegations suggest that none of APRN Butters's recommendations were adopted, see Compl. ¶ 94, but he later alleges that the prescribed medications were "confiscated" and not yet "returned," id. ¶¶ 102-03, suggesting that plaintiff did in fact receive the recommended medications.

6

429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at 1060. In addition, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Liberally construing the complaint, plaintiff has stated a cognizable claim against Dr. Allred for his alleged deliberate indifference to the seriousness of plaintiff's medical condition and the recommendations for treatment of various other medical professionals. However, plaintiff's allegations against the remaining defendants are too vague and conclusory to state a claim. He states only generally that he told the defendants, that one unidentified defendant accompanied him to the emergency room, and that the defendants (an allegation that is, again, asserted generally) failed to comply with medical recommendations. These allegations are insufficient to proceed.

**V.     Conclusion**

Plaintiff's complaint states a cognizable Eighth Amendment medical indifference claim against Dr. Allred. No other claim is cognizable as plead.

The Court will grant plaintiff the opportunity to file an amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment).

If plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims. The undersigned will then recommend that his remaining claims be dismissed.

If plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

////

8

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Federal Correctional Institution filed concurrently herewith.

3. The Clerk's Office shall send plaintiff a blank civil rights complaint form;

4. Within thirty days from the date of service of this order, plaintiff must:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claims found to be cognizable in this order; or

   c. Notify the Court in writing that he wishes to stand on his complaint as written; and

5. If plaintiff fails to comply with this order, the undersigned will recommend the action be dismissed for failure to obey a court order and failure to prosecute.

Dated: March 3, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/mosz1010.scrn

9